CHARLES W. BOYNTON

*v.*

PLOWDEN H. BALL.

*Filed at Ottawa March 28, 1883.*

1. BANKRUPTCY—*stay of suit until discharge.* An alleged bankrupt, under the act of 1867, might, on application, have procured a stay of any suit pending against him, to await the determination of the proceeding in bankruptcy, and on obtaining his discharge he might have pleaded the same in bar of the action. If he should fail to avail of this remedy, and suffer judgment to go against him pending the proceedings in bankruptcy, he will *not* be discharged from the same by subsequently obtaining his discharge in bankruptcy.

2. SAME—*judgment after adjudication, becomes a new debt.* A judgment obtained against one after he is adjudged a bankrupt, creates a new debt, which can not be proved in bankruptcy, because the judgment is a merger; and the creditor can not interpose to prevent the discharge, because he has no provable debt, and because the discharge will be no bar to his judgment.

3. SAME—*staying judgment.* Where a defendant, pending an action against him in the State court, makes his application in bankruptcy, and is adjudged a bankrupt in the United States District Court, after which, and before his discharge, he voluntarily goes to trial in the State court, and judgment is therein rendered against him, he will not be entitled, after his discharge in bankruptcy, to have an order entered in the State court for a perpetual stay of proceedings under the judgment. By suffering such judgment to be rendered he waives his right to be discharged therefrom.

4. MERGER—*in judgment or decree.* Every cause of action, when a recovery is had thereon, is merged in the judgment or decree, which thereafter represents the rights of the parties.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. SWETT, BATES & HASKELL, for the appellant:

The revival of the decree against Boynton by putting it into a new judgment after his being adjudged a bankrupt, and before his discharge, was an unlawful act. U. S. Stat. secs. 5067, 5106, 5117, 5118, 5119.

A motion to stay, perpetually, the execution issued upon the judgment unlawfully obtained, is, among others, a proper procedure. The summary remedy by motion has superseded the ancient writ of *audita querela. Chambers & Garner* v. *Neal,* 3 B. Mon. 257; *Davis* v. *Shapley,* 1 B. & A. 54; *Barrow* v. *Poyle,* id. 629; *Humphrey* v. *Knight,* 6 Bing. 572; *Alcott* v. *Avery,* 1 Barb. Ch. 347.

The safest course for a bankrupt having a judgment ostensibly in force against him, is to take some affirmative action to secure the benefit of his discharge. Freeman on Enforcement of Judgments against Bankrupts, 37. See, also, *Coburn* v. *Spence,* 15 Ala. 549; *Borden* v. *Jaco,* 17 id. 344; *Westenberger* v. *Wheaton,* 8 Kan. 169; *Murphy* v. *Smith,* 22 La. Ann. 441.

The rule of the English cases is uniform, and bears upon two branches of the case: First, that the relief sought may

be obtained in a summary manner by motion or rule to show cause; and secondly, it shows that the defendant having obtained a certificate of discharge, is relieved, not only from the debt which might have been proved, "but from all remedies for the recovery of such debt." The following text writers and cases support the views above stated: Freeman on Judgments, 245; *Coburn* v. *Spence*, 15 Ala. 549; *Borden* v. *Jaco*, 17 id. 344; *Westenberger* v. *Wheaton*, 8 Kan. 169; *Murphy* v. *Smith & Nicholson*, 22 La. Ann. 441; Bump on Bankruptcy, (9th ed.) 285; *Hamilton* v. *Wood*, 34 N. J. L. 305; *Lloyd* v. *Ford*, 7 Halst. (N. J.) 151; *Boteflour* v. *Coates*, 1 Cowp. 25; *Blandford* v. *Foot*, id. 138; *Scott* v. *Ambrose*, 3 M. & S. 326; *Willett* v. *Prindle*, B. & P. 190; *Dams* v. *Shapley*, 1 B. & A. 54; *Barrow* v. *Poyle*, id. 629; *Imlay* v. *Carpenter*, 14 Cal. 173; *In re Brown*, 3 N. B. 585; *In re Vickory*, id. 637; *In re Crawford*, id. 171; *In re Stephens*, 4 id. 369; *In re Rosey*, 8 id. 509; Bump on Bankruptcy, 10th ed.) 82; *McDowgold* v. *Reid*, 5 Ala. 810; *McDonald* v. *Ingraham*, 30 Miss. 394; *Downer* v. *Rowell*, 26 Vt. 400; *Rogers* v. *Western Marine and Fire Ins. Co.* 1 La. Ann. 160; *Moore* v. *Upton*, 5 N. Y. 596; *Johnson* v. *Fitzhugh*, 3 Barb. Ch. 372; *Mechanics' Banking Association* v. *Lawrence*, 1 Sandf. 659; *Shurtliff* v. *Thompson*, 63 Maine, 118; *Cornell* v. *Dakin*, 38 N. Y. 253; *Mizell* v. *Moore*, 7 Ired. (N. C.) 255; *Matter of Allen*, 5 Law Rep. 362; *Goodall* v. *Bachelder*, 17 N. H. 386; Bump on Bankruptcy, (6th ed.) 411; *Blake* v. *Bigelow*, 5 Ga. 437; *Turner* v. *Gatwood*, 8 B. Mon. (Ky.) 613; *Curtis* v. *Slosson*, 6 Pa. St. 265; *Wood* v. *Tunstall*, 2 Bax. (Tenn.) 319; *Dick* v. *Powell*, 2 Swan, 632; *Peatross* v. *McLaughlin*, 6 Gratt. 64.

Mr. J. A. CRAIN, for the appellee:

The neglect of Boynton, after he had gone into bankruptcy, to apply for a stay of proceedings, and resting his defence on other grounds, whereby he allowed judgment to be entered

against him, constitutes such *laches* on his part that he can not now be heard to set up his discharge against the judgment.

The original cause of action was merged in the judgment pending the proceedings in bankruptcy, and no longer exists. The judgment now constitutes the debt, and having no existence at the time of the adjudication in bankruptcy, is not provable against the bankrupt's estate. *Holbrook* v. *Foss,* 27 Maine, 441; *Pike* v. *McDonald,* 32 id. 418; *Sampson* v. *Clark,* 2 Cush. 173; *Kellogg* v. *Schuyler,* 2 Denio, 73; *Faxon* v. *Baxter,* 11 Cush. 35; *Carrington* v. *Halibird,* 17 Conn. 580; *In re Gallison,* 2 Lowell, C. C. 74; *Fisher* v. *Foss,* 30 Maine, 459; *Woodbury* v. *Perkins,* 5 Cush. 86; *Walcott* v. *Hodge,* 15 Gray, 547; *Ellis* v. *Horn,* 28 Maine, 385; *Uran* v. *Houdlette,* 36 id. 15; *Ewing* v. *Peck & Clark,* 17 Ala. 341; *Medbury* v. *Swan,* 46 N. Y. 203; *Monroe* v. *Upton,* 50 id. 594.

An adjudication in bankruptcy does not divest the State court of its jurisdiction of a pending suit. The bankrupt may have the proceedings stayed until his discharge is granted, when he may plead the same. If he does not, and allows judgment to go against him, the judgment will bind him, notwithstanding his discharge thereafter. *Steadman* v. *Lee,* 61 Ga. 59; *Everts* v. *Hyde,* 51 Vt. 102; *Hersey* v. *Jones,* 128 Mass. 472; *Miller* v. *Clements,* 54 Texas, 351; 49 id. 16; 42 id. 1; *Bradford* v. *Rice,* 102 Mass. 473; *Sampson* v. *Clark,* 2 Cush. 173; *Woodbury* v. *Perkins,* 5 id. 86; *Holden* v. *Sherwood,* 94 Ill. 92; *In re Mansfield,* 6 Bank. Reg. 303.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

Plowden H. Ball brought an action of debt against Charles W. Boynton, at the September term, 1877, of the circuit court of Stephenson county, to recover the amount of a decree which had been rendered in the circuit court of that county several years prior to the commencement of the action. At the following April term, 1878, of the court, the defendant,

by his attorney, filed a plea of the general issue. On the 15th day of April, 1878, Boynton was adjudged a bankrupt in the United States District Court for the Northern District of Illinois. At the December term, 1879, of the court, the cause was called for trial, and the parties appeared by their attorneys, waived a jury, and a trial was had before the court, which resulted in a judgment in favor of the plaintiff for the amount of the decree, together with the interest thereon. After the rendition of the judgment, and on the 23d day of December, 1880, Boynton received his final discharge in bankruptcy, and on the 25th day of March, 1881, he filed this petition and motion in the Stephenson circuit court for a perpetual stay of proceedings on the judgment, on the ground that he had received his discharge in bankruptcy. The motion was heard by the court, and overruled. An appeal was taken to the Appellate Court, where the judgment of the circuit court was affirmed, and Boynton appealed to this court.

Whether a perpetual stay of proceedings to enforce the collection of the judgment against the bankrupt, shall be granted, depends upon the construction to be placed upon the Bankrupt act of 1867. Section 5106 declares: "No creditor whose debt is provable shall be allowed to prosecute to final judgment any suit at law or equity therefor, against the bankrupt, until the question of the debtor's discharge shall have been determined; and any such suit or proceedings shall, upon the application of the bankrupt, be stayed to await the determination of the court of bankruptcy on the question of the discharge: *Provided*, there is no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge: *And provided, also,* that if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment, for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed." Section 5117

provides that no debt created by fraud or embezzlement of the bankrupt, or by his defalcation as a public officer or while acting in a fiduciary character, shall be discharged. Section 5118 declares that no discharge shall release or affect any person liable for the same debt for or with the bankrupt. Section 5119 provides that "a discharge in bankruptcy, duly granted, shall, subject to the limitations imposed by the two preceding sections, release the bankrupt from all debts, claims, liabilities and demands which were or might have been proved against his estate in bankruptcy."

It will be observed that Boynton, after he was adjudged a bankrupt, did not appear in the circuit court, where the action was pending against him, and enter a motion for a continuance of the cause, or a stay of proceedings, until the determination of the court of bankruptcy on his discharge, as he might have done under section 5106 of the Bankrupt act; and on account of a failure on the part of Boynton to procure such stay of proceedings, it is contended that the judgment rendered against him was not affected by his final discharge, subsequently obtained.

The question involved has led to much discussion among law writers, and although it has often arisen in the courts of England and the United States, the decisions are by no means harmonious. We have been referred to a large number of cases decided in England, where the courts hold that a judgment rendered against a bankrupt after he was declared a bankrupt, and before the final discharge was obtained, upon a preëxisting debt, is released by the discharge. Among the number is *Blandford* v. *Foot*, 1 Cowp. 138, which is a leading case on the subject. We do not question the rule in England,—it is uniform; but the decisions in England can not be relied upon as authority here, for the reason they are predicated on a provision in the statute of that country which does not exist in our Bankrupt law. The substance of the statute is, that if the creditor did obtain judgment before

final discharge, and take the debtor in execution, he should be discharged on motion. (See dissenting opinion of BRONSON, Ch. J., in *Clark* v. *Rowling*, 3 N. Y. 225, and opinion of the court in *In re Gallison*, 2 Lowell, C. C. 74, where the statute of England is quoted and considered.) If our Bankrupt law contained the same provision as that of England, then the decisions of that court might be regarded as authority. But such is not the case. As stated before, in the United States the decisions on the question are in direct conflict. Under the Bankrupt act of 1841, in Maine, Massachusetts, and some other States, it was held that a discharge in bankruptcy did not release a judgment rendered against the bankrupt pending the proceedings in bankruptcy; that where a judgment is recovered on a debt provable under the bankrupt proceedings against the bankrupt, the original debt becomes merged and extinguished in the judgment, which is not provable against the bankrupt. (*Holbrook* v. *Foss*, 27 Maine, 441; *Fisher* v. *Foss*, 30 id. 459; *Pike* v. *McDonald*, 32 id. 418; *Sampson* v. *Clark*, 2 Cush. 173; *Woodbury* v. *Perkins*, 5 id. 86; *Faxon* v. *Baxter*, 11 id. 35.) In New York, Vermont, and some other States, it has been held that if the debt upon which the judgment was rendered was one provable against the bankrupt, and would be cut off by the discharge, the judgment rendered upon such a debt would be barred and cut off by the discharge. *Harrington* v. *McNaughton*, 20 Vt. 293; *Downer* v. *Rowell*, 26 id. 397; *Dresser* v. *Brooks*, 3 Barb. 429; *Church* v. *Rowling*, 3 N. Y. 116.

We shall not, however, stop to determine what is the correct rule under the act of 1841, as there is, in our judgment, a marked distinction existing between the act of 1841 and the act of 1867. The act of 1841 made no provision whatever for the postponement of an action pending against a bankrupt between the time he was adjudged a bankrupt and the time he received a final discharge. This seeming defect

in the act of 1841 was cured by the provision contained in section 5106 of the act of 1867, in these words: "Any such suit or proceeding shall, upon the application of the bankrupt, be stayed to await the determination of the court of bankruptcy on the question of the discharge." Here is a complete remedy provided, if the bankrupt desires to avail of it, to prevent a judgment from being rendered against him until he can procure a final discharge. The object, of course, was to prevent a judgment which the discharge might not relieve the bankrupt from, as held by the courts of Maine and Massachusetts, until the discharge should be granted, which the bankrupt could then plead in bar of the pending action against him, and thus prevent the rendition of a judgment in the court in which the action might be pending.

Under section 5119, Boynton's discharge relieved him of all debts which were or might have been proved against his estate in bankruptcy. Was the judgment in question a debt of that character? Obviously, the section means all indebtedness existing at the time Boynton was declared a bankrupt, which was April 15, 1878. At this date the judgment was not in existence, as it was not rendered until December, 1879. But it is said the debt upon which the judgment was rendered was in existence at the time Boynton was adjudged a bankrupt, and as the original indebtedness was provable, and would have been barred by the discharge, the judgment stands in the same position. It may be regarded a well settled and uniform rule of law, that every cause of action will, if recovered upon, merge into the judgment or decree. (Freeman on Judgments, sec. 216.) If the action is upon a simple contract, a bond, or a judgment of a court of record, in either case, when a recovery is had the cause of action is merged into the judgment, when a judgment has been rendered. Freeman, in his work on Judgments, sec. 217, says: "Every judgment is, for most purposes, to be regarded as a new debt, the chief, and perhaps the only, exception being in

cases where the technical operation of the doctrine of merger would produce manifest hardship,—and even these cases are by no means universally excepted. This new debt is not, in general, affected by the character of the old one." The author, in sec. 245, however, says: "In no class of cases has the technical operation of the doctrine of merger been so frequently limited as in those where the effect of a discharge under laws for the relief of insolvents had to be determined."

An able discussion of this subject may be found in *Gould* v. *Hogden*, 63 Ind. 448, where a judgment had been rendered in a court of record in that State, and afterwards a recovery was had on the judgment in the State of Ohio. The question was, whether the first judgment was so merged and absorbed in the second judgment as to destroy the lien and validity of the first judgment. It is there said: "The plaintiff may enforce its collection by the process of the court in which he obtained his judgment, or he may, if he may elect so to do, use his judgment as an original cause of action, and bring suit thereon in the same or some other court of competent jurisdiction, and prosecute such suit to final judgment. This procedure he may pursue as often as he elects, using the judgment last obtained as a cause of action on which to obtain the next succeeding judgment; but the very freedom with which this may be done, *ad infinitum*,—and we know of no law or legal principle which would prevent its unending repetition,—is, to our minds, a convincing and conclusive reason why each successive personal judgment ought to, and must, be regarded as a complete merger and extinguishment of the preceding judgment, with all its qualities and incidents. Each successive personal judgment is a new 'debt of record,' in which the precedent debt, though theretofore evidenced by a judgment, is as completely merged and absorbed as it would have been if it had been evidenced by note, bill, bond, or any other evidence of debt."

In the case of *In re Gallison*, 2 Lowell, C. C. 74, LOWELL, J., in discussing this question, after reviewing various authorities, says: "For the reasons given, and upon careful examination of the decisions, I am of opinion that a judgment obtained after the adjudication in bankruptcy, creates a new debt, which can not be proved in bankruptcy, because the judgment is a merger and creates a new debt, and that the judgment creditor can not oppose the discharge because he has no provable debt, and because the discharge will be no bar to the judgment."

There are cases which hold a contrary view. While the general doctrine of merger is admitted, it is held that the rendition of a judgment does not, within the meaning of the law, create a new debt. Such are *Dresser* v. *Brooks*, 3 Barb. 429; *Dawson* v. *Hartsfield*, 79 N. C. 334; *In re Stephens*, 4 N. B. 369; *In re Brown*, 3 id. 585. But we are satisfied the better doctrine, and that, too, established by the later decisions, is, that a judgment rendered after an adjudication in bankruptcy, creates a debt which can not be proved against the bankrupt's estate,—that the indebtedness existing prior to the recovery becomes merged in the judgment.

If, however, we are not correct in this view, there is another ground which will preclude the bankrupt from impeaching the judgment, which has been clearly stated by the Supreme Court of Massachusetts in *Bradford* v. *Rice*, 102 Mass. 472. The court, after holding that a debt provable against the bankrupt, when reduced to judgment, pending the proceedings, is merged and extinguished, then says: "The creditor, by taking judgment, and so changing the form of his debt, and securing to himself the benefit of conclusive and permanent evidence of it, and an extension of the period of limitation of an action thereon, is held, on his part, to have elected to look to the debtor personally, and to abandon the right to prove against his estate; and the debtor, on the other hand, who might have protected himself by moving the court in

which the action was pending for a continuance, in order to afford him an opportunity to obtain and plead a certificate of discharge, is held, by omitting to make such a motion before judgment, to have waived the right to set up his certificate against the plaintiff's claim,— and therefore the rights of both parties must be governed by the judgment which the one has moved for and the other has suffered to be rendered."

What right has Boynton to complain that a judgment was rendered against him in the Stephenson circuit court? He was served with process, appeared, and pleaded to the action. He knew the action was pending when he was adjudged a bankrupt, and he knew that he could obtain a stay of proceedings, by entering a motion for that purpose, until he could obtain a discharge and plead it in bar of the action, and yet he made no effort whatever to procure a stay, but, on the other hand, voluntarily submitted to a trial. It was his own negligence which led to the judgment which he now seeks, by motion, to avoid. A motion for relief, as against a judgment of this character, may be treated as an equitable proceeding; and it is a well established rule that a party who fails to make a defence at law shall not be permitted to come into equity and have such defence allowed, unless he can show he was prevented by accident, mistake or fraud, which is not pretended in this case. (*Twine, Admr.* v. *Osgood,* 57 Ill. 345.) The circuit court did not lose jurisdiction of the case because Boynton was adjudged a bankrupt, but, as was held in *Eyster* v. *Goff,* 1 Otto, 521, it was the duty of the court to proceed with the cause, until, by some pleadings, the court was informed of the changed relations of the parties. (See, also, *Holden* v. *Sherwood,* 84 Ill. 92.) The circuit court could do nothing less than proceed with the case to final judgment, and as the judgment is to be regarded as the joint act of Boynton, who, of his own choice, allowed it to be rendered, and of the plaintiff, upon whose motion it was ren-

dered, the rights of these two parties must be regarded as finally settled by that judgment. We are not aware of any case that holds that where a defence might have been made to a pending cause of action, but was not set up solely through the negligence of a defendant, such defendant may afterwards interpose the same defence to the judgment which has been rendered against him. It is ordinarily enough that a party has had a day in court, and an opportunity to plead his defence. The Bankrupt act in clear terms provides for the stay of an action which may be instituted against the bankrupt, until his discharge is passed upon. This statutory provision was incorporated into the law for the purpose of enabling a defendant, situated as was appellant, to plead his discharge in bar of the action; but as appellant gave no heed whatever to the law, and through his own negligence allowed a judgment to be rendered against him, what reason can be urged for holding that the judgment shall not be binding upon him? None is perceived.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. Chief Justice Scott, and Mr. Justice Dickey: We do not concur in this opinion.